[Cite as *State v. Rogers*, 2014-Ohio-103.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26877 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHANE E. ROGERS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2012-11-3306 |

DECISION AND JOURNAL ENTRY

Dated: January 15, 2014

CARR, Presiding Judge.

{¶1} Appellant Shane Rogers appeals the judgment of the Summit County Court of Common Pleas that denied his motion to suppress. This Court affirms.

I.

{¶2} After initiating a traffic stop, the police confirmed that Rogers was the owner of the vehicle and that his license had been suspended, with limited driving privileges. During the course of Rogers' arrest, the police discovered a bag of oxycodone pills in his pocket. He was subsequently indicted on one count of aggravated possession of drugs, a felony of the fifth degree. Rogers filed a motion to suppress, arguing that the initial traffic stop was not based on the officer's reasonable suspicion of criminal activity. He further argued that all evidence obtained as a result of the illegal traffic stop must be suppressed. The trial court held a hearing on Rogers' motion to suppress and subsequently denied the motion. Rogers thereafter pleaded no contest to the charge and was sentenced accordingly. Rogers filed a timely appeal in which

he raises two assignments of error for review. As the assignments of error are interrelated, this Court addresses them together.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT HAVING A DUI RESTRICTED PLATE ON A PARKED VEHICLE COMMITTING NO OTHER OFFENSE GAVE RISE TO A REASONABLE SUSPICION THAT CRIME WAS AFOOT SUFFICIENT TO SUPPORT A STOP.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY RELYING ON FACTS NOT IN EVIDENCE.

**{¶3}** Rogers argues that the trial court erred by denying his motion to suppress, in part because it relied on facts not in evidence to conclude that "suspicious activity" gave rise to the officer's reasonable suspicion of criminal activity to justify a traffic stop. This Court disagrees.

**{¶4}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. The reviewing court must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

**{¶5}** The United States Supreme Court has held:

The Fourth Amendment [to the United States Constitution] guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a

limited purpose, constitutes a seizure of persons within the meaning of this provision. An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances.

(Internal quotations and citations omitted.) *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

**{¶6}** Moreover,

[t]he essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions[.] Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against the promotion of legitimate governmental interests.

(Internal quotations and citations omitted.) *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979).

**{¶7}** This Court has long recognized established precedent that "[a] police officer may stop a vehicle if the officer has a reasonable suspicion, based on specific and articulable facts, that the occupant of the vehicle is or has been engaged in criminal activity." *State v. Shardy*, 9th Dist. Medina No. 2430-M, 1995 WL 734018 (Dec. 13, 1995), citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Prouse*, 440 U.S. at 655-656; and *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). As we recently enunciated the law:

To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry*, 392 U.S. at 21. In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). A totality of the circumstances review includes consideration of "(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *State v. Biehl*, 9th Dist. Summit No. 22054, 2004-Ohio-6532, ¶ 14, citing *Bobo* at 178-179. "Where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is

constitutionally valid * * *." (Internal quotations, citations, and emphasis omitted.) *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 11.

*State v. Carano*, 9th Dist. Summit No. 26544, 2013-Ohio-1633, ¶ 8.

{¶8} In this case, Officer Drew Reed of the Akron Police Department testified that he was on patrol one evening around 9:50 p.m., when he observed a vehicle pulled over in a legal parking spot on the roadway. Officer Reed noticed that the vehicle bore the red and yellow restrictive plates that designate that the vehicle owner's driver's license had been suspended for driving while under the influence. He further noticed that there were two people in the vehicle, that the engine was running and the lights were on, and that the driver and passenger were both looking down towards the center console area of the vehicle. Officer Reed testified that the vehicle was idling in a high crime area and that he had made numerous drug-related arrests in the area. He testified that, based on his training and experience, people involved in drug use or sales typically look down while engaging in those activities. Based on his observations, Officer Reed testified that he found the circumstances suspicious. He, therefore, entered the vehicle's license plate number into the LEADS (computer database) system and discovered that the owner of the vehicle had a suspended license with only limited driving privileges. Officer Reed testified that he then initiated an investigatory traffic stop.

{¶9} Thereafter, the officer confirmed that Rogers owned the vehicle and had a suspended driver's license with restricted driving privileges; and discovered that Rogers could not verify that he was driving for his purported work-related purpose, specifically, to repair a homeowner's furnace. When the officer asked Rogers to exit the vehicle so he could place him under arrest for driving while under license suspension, the officer noticed a bag of pills fall

from Rogers' pocket. The pills were oxycodone and formed the basis for the subsequent charge of aggravated possession of drugs.

{¶10} This Court concludes that Officer Reed's investigatory stop of Rogers' vehicle was proper. Based on a totality of the circumstances, the officer had a reasonable suspicion of criminal activity. The vehicle bore restricted license plates. The officer then properly checked the status of the vehicle and owner in the LEADS database via his cruiser computer. *Shardy*, 1995 WL 734018 (holding that there is no reasonable expectation of privacy with regard to a vehicle license plate and that the police may reasonably infer that a vehicle is being driven by its owner). The LEADS database indicated that the owner of the vehicle had a suspended license with limited driving privileges. Nevertheless, the vehicle was idling with its lights on at a time outside normal business hours. Moreover, there were two people in the running vehicle, raising the reasonable inference that the driver was not going to or from his own place of employment, but was rather engaged in personal activities with someone else. The officer testified, based on his experience patrolling in the neighborhood, that the vehicle was idling in a high-crime area where he personally had recently made frequent drug-related arrests. He further testified that he knew, based on his training and experience, that people involved in using or selling drugs together often focus their attention downward. Both the driver and passenger in the vehicle were looking down towards the vehicle's center console when the officer noticed the vehicle.

{¶11} Based on a totality of the circumstances, Officer Reed had a reasonable suspicion that the driver of the vehicle was driving while under a license suspension and that he was driving outside the scope of any privileges. Based on his LEADS search, the officer was aware that the vehicle's owner had only limited driving privileges. He could moreover reasonably infer that the driver was the owner of the vehicle. *Shardy, supra*. The driver had a passenger in the

vehicle and they were sitting in the idling vehicle rather than traveling on their way to or from a possible place of employment. In addition, they were idling in a high-crime residential neighborhood at a time of night that would not reasonably comport with work-related services in a home.

{¶12} Officer Reed further had a reasonable suspicion that the vehicle's occupants were engaged in drug-related criminal activity. Both passengers were sitting in a running vehicle at night in a high-crime area known for illegal drug sales and were focusing their attention in a manner common to people involved in using or selling drugs. The restricted license plates on the vehicle designated the owner of the vehicle as someone who had been convicted of driving while under the influence of alcohol, a drug of abuse, or both. Accordingly, this Court concludes that the officer had a reasonable suspicion of criminal activity when he stopped Rogers' vehicle.

{¶13} This Court cautions that the mere presence of restricted license plates on a vehicle does not give rise to the reasonable suspicion of criminal activity. However, the presence of restricted plates coupled with other factors such as time, location, the police officer's observations considered within the scope of his experience and training, information that the vehicle owner has limited or otherwise restricted driving privileges, and information that the driver's physical appearance reasonably comports with the description of the owner, may give rise to an officer's reasonable suspicion of criminal activity under the totality of the circumstances. Under those circumstances, as in this case, the investigatory traffic stop was proper. Accordingly, the trial court did not err by denying Rogers' motion to suppress.

{¶14} Moreover, the trial court's finding that the officer testified regarding "suspicious activity" beyond the existence of the restricted license plates was supported by competent, credible evidence in the record. Officer Reed clearly testified that the circumstances surrounding

the vehicle, idling on the side of the road at night in a high-crime area known for illegal drug sales, and which contained two males behaving in a manner known in the officer's training and experience to indicate drug use or sales, appeared suspicious.

{¶15} Rogers' assignments of error are overruled.

III.

{¶16} Rogers' first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

JOSEPH A. KACYON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.