[Cite as *State v. Won*, 2021-Ohio-3869.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

CHONG U. WON

    Appellant

C.A. No.     20CA0076-M

APPEAL FROM JUDGMENT
ENTERED IN THE
WADSWORTH MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.     20TRC01484

DECISION AND JOURNAL ENTRY

Dated: November 1, 2021

CARR, Presiding Judge.

{¶1} Defendant-Appellant Chong U. Won appeals the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

{¶2} Following a July 19, 2020 traffic stop, a complaint was filed charging Won with driving while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) and a marked lanes violation under R.C. 4511.33.

{¶3} Won filed a motion to suppress asserting that the trooper lacked the reasonable suspicion necessary to conduct field sobriety testing. Following a hearing on the motion, the trial court issued an entry denying the motion to suppress. Won then pleaded no contest and was sentenced accordingly.

{¶4} Won has a raised a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT FOUND TROOPER YUREK HAD REASONABLE, ARTICULABLE SUSPICION TO CONTINUE APPELLANT'S DETENTION BEYOND THE INITIAL REASON FOR THE STOP TO PERFORM FIELD SOBRIETY TESTS.

{¶5} Won argues in his sole assignment of error that the trial court erred in denying his motion to suppress. Specifically, he maintains that some of the trial court's findings of fact are not supported by the record.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶7} "A police officer must simply have a reasonable suspicion of criminal activity in order to conduct field sobriety tests." *State v. Todd*, 9th Dist. Wayne No. 19AP0012, 2020-Ohio-963, ¶ 8, citing *State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 12. "Reasonable suspicion requires that an officer be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Todd* at ¶ 8, quoting *State v. Davenport*, 9th Dist. Lorain No. 11CA010136, 2012-Ohio-4427, ¶ 6. "The totality of the circumstances is considered when determining whether

reasonable suspicion exists." *State v. Panero*, 9th Dist. Medina No. 16CA0067-M, 2018-Ohio-1005, ¶ 18. "[N]o single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." (Internal quotations and citations omitted.) *State v. Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 25.

{¶8}  On Sunday, July 19, 2020, Trooper Tara Yurek with the Ohio State Highway Patrol was patrolling Interstate 71 in Guilford Township in Medina County. Close to midnight, Trooper Yurek observed a gray pickup truck in the right lane traveling approximately 50 m.p.h. in a 70 m.p.h. zone. She began to follow the vehicle and witnessed it make several marked lane violations. She also noted that the truck was weaving within its lane. Trooper Yurek then initiated a traffic stop. The vehicle pulled over, however, it was straddling the right lane and the berm.

{¶9}  Trooper Yurek approached the passenger side for safety and motioned the driver, Won, to roll down the front passenger window. Won began to roll down the right rear window instead. After the window was partially down, Won realized his mistake and rolled down the front window. Won provided Trooper Yurek with the appropriate documents.

{¶10}  Trooper Yurek asked where Won was coming from and going to and Won indicated that he was coming from Cleveland and going home. When she asked where Won was at in Cleveland he said he was with some friends. Trooper Yurek inquired if he was at a friend's house, Won told her he was in Lakewood.

{¶11}  Trooper Yurek informed Won of the reason for the stop and asked him to pull the vehicle all the way onto the berm. Won moved the truck onto the berm but was still very close to the marked white line.

{¶12} Trooper Yurek then went to the driver's side to ask Won to step out of the vehicle so that she could safely talk to him. Trooper Yurek testified that there had been a traffic stop in Ashland where the van did not move completely into the berm and a commercial truck hit the van.

{¶13} When Won stepped out of the vehicle, Trooper Yurek smelled the odor of an alcoholic beverage emanating from his person. She also asked him if he had consumed any alcohol. Won said "maybe earlier." Trooper Yurek inquired whether Won had a beer or something like that and he nodded his head up and down and said yes. Based on the foregoing circumstances, Trooper Yurek then decided to conduct field sobriety testing.

{¶14} First, Won challenges the trial court's finding that "[t]he trooper testified that because she was so far away from the defendant she really couldn't see his eyes or get an indication of odor because this was a rather large pickup truck." Won is correct that the size of the pickup is not discussed in the transcript. However, Trooper Yurek did agree that, while she was on the passenger side of the vehicle, she could not see if Won's eyes were bloodshot or glassy. To the extent the finding is inaccurate, we fail to see how it is anything other than harmless. *See State v. Buck*, 2d Dist. Montgomery No. 21297, 2006-Ohio-4394, ¶ 9; *State v. Brooks*, 11th Dist. Lake No. 2005-L-200, 2007-Ohio-344, ¶ 27. The trial court did not find that Won's eyes were glassy and bloodshot and, thus, the appearance of his eyes did not contribute to the trial court's conclusion that there was reasonable suspicion to conduct field sobriety tests. The trial court's entry correctly reflects that Trooper Yurek did not notice an odor of alcohol coming from Won until after she asked him to step out of the vehicle.

{¶15} Won next challenges the trial court's finding that Trooper Yurek asked Won to step out of the vehicle for safety reasons. He maintains that, at the point Trooper Yurek asked

him to step out of the vehicle, Trooper Yurek had already decided to conduct field sobriety tests, and thus, the additional findings noted by the trooper after Won stepped out of the truck should not be considered. Here, there was somewhat conflicting testimony as to why the trooper had Won exit the vehicle.

{¶16} On cross-examination, the following discussion occurred:

[Won's Counsel:] You decided that you're going to get him out to do a field sobriety test at that point?

[Trooper Yurek:] Right. To talk to him and do field sobriety tests, right.

[Won's Counsel:] Yeah. So at that point you decided you're going to do a field sobriety test. Yes?

[Trooper Yurek:] Yes. I get him out of the vehicle, yes.

{¶17} While this testimony could support Won's claim, there was also testimony that supports that Trooper Yurek removed Won from the vehicle for safety reasons and only decided to perform field sobriety testing after Won was outside the vehicle. On direct examination, Trooper Yurek testified that she had Won get out of the vehicle for safety reasons. In so doing, she described a prior collision at a traffic stop that prompted her concern. She also detailed the safety precautions she undertook in approaching the driver's side of the vehicle to ask Won to step out. After she testified as to Won's characterization of his alcohol consumption, Trooper Yurek stated that, based upon the totality of the circumstances, she decided to conduct field sobriety testing. On redirect, Trooper Yurek again confirmed that she removed Won from the vehicle for safety reasons.

{¶18} Given the foregoing, we conclude that the trial court's finding the Trooper Yurek removed Won from the vehicle for safety reasons is supported by competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372 at ¶ 8. We are mindful that the trial court, as the trier of fact, is in "the best position to resolve factual questions and evaluate the credibility of

witnesses." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8, citing *Mills*, 62 Ohio St.3d at 366.

{¶19} Won also argues that the trial court should have only found two out of eleven factors present from *State v. Evans*, 127 Ohio App.3d 56, 63 (11th Dist.1998), fn.2, namely: the time and day and erratic driving. Given only those two factors, he maintains that Trooper Yurek lacked reasonable suspicion to conduct field sobriety testing. The factors listed in *Evans* are as follows:

> (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*Id.*

{¶20} The trial court found factors 1, 3, 7-8, 10, and 11 present. Won does not dispute that factors 1 and 3 would weigh in favor of reasonable suspicion. As to factors 7 and 8, Won argues that the information concerning his alcohol consumption did not come to light until after Won exited the vehicle. This argument is premised on the notion that Trooper Yurek decided to conduct field sobriety testing prior to having Won exit the vehicle; we addressed this issue previously and found it to be without merit. It is true that Trooper Yurek did not testify as to the intensity of the odor of alcohol; however, the trial court concluded that factor 8 weighed in favor

of reasonable suspicion because Trooper Yurek noticed the odor of alcohol coming from Won's person immediately when he exited the vehicle. Even assuming, there is some error in the trial court's application of this evidence to factor 8, we conclude that, taken together, the evidence supports the trial court's conclusion that Trooper Yurek possessed reasonable suspicion. As to factor 10 (actions by the defendant after the stop that might indicate a lack of coordination), the trial court pointed to Won's act of rolling down the incorrect window and failing to completely pull off the interstate during the initial stop. Won argues that he could have accidentally rolled down the wrong window, and thus, it would not support impairment. However, merely because Won's error in rolling down the wrong window *could* have been attributed to something other than impairment does not mean that it should not be considered as a possible indicator. *See id.* ("any actions by the suspect after the stop that *might* indicate a lack of coordination") (Emphasis added.). With respect to factor 11 (related to the admission of alcohol consumption), Won again makes the argument that this information was not available to Trooper Yurek at the time she decided to conduct field sobriety testing. Yet, this argument is premised on the notion that Trooper Yurek decided to conduct field sobriety testing prior to removing Won from the vehicle, an argument we previously addressed and rejected.

{¶21} Considering the totality of the circumstances, we cannot say that Won has demonstrated that the trial court erred in denying his motion to suppress. On a Sunday evening, close to midnight, Trooper Yurek noticed Won's vehicle going around 50 m.p.h. in a 70 m.p.h. zone and thereafter witnessed several traffic violations. Won did not pull his vehicle completely on to the berm when he stopped, which Trooper Yurek described as uncommon. Then, when Won was asked to move the vehicle farther over, he parked very close to the white line. Won initially rolled down the wrong window when asked for his documents. When Won stepped out

of the vehicle, an odor of alcohol emanated from his person and he admitted to prior alcohol consumption. Taken together, we conclude that the trial court did not err in finding that Trooper Yurek possessed reasonable suspicion authorizing her to conduct field sobriety testing.

{¶22} Won's assignment of error is overruled.

III.

{¶23} Won's assignment of error is overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

DAVID C. SHELDON, Attorney at Law, for Appellant.

THOMAS J. MORRIS, Director of Law, and BRADLEY J. PROUDFOOT, Assistant Director of Law, for Appellee.