[Cite as *State v. Slimmer*, 2023-Ohio-4756.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

SAMUEL SLIMMER

    Appellant

C.A. No.    30191

APPEAL FROM JUDGMENT
ENTERED IN THE
STOW MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    2021 TRC 05029

DECISION AND JOURNAL ENTRY

Dated: December 27, 2023

SUTTON, Presiding Judge.

{¶1} Defendant-Appellant Samuel Slimmer appeals the judgment of the Stow Municipal Court. This Court affirms.

I.

{¶2} On July 31, 2021, at approximately 3:05 a.m., Officer Samantha Wike stopped Mr. Slimmer's vehicle for not having working taillights. Officer Wike's observations caused her to remove Mr. Slimmer from the vehicle for him to undergo standardized field sobriety testing. Following the field sobriety testing and a portable breath test, Mr. Slimmer was arrested for operating a vehicle while under the influence of alcohol, operating a vehicle with prohibited concentration of alcohol in the breath, and no taillights.

{¶3} A complaint was filed alleging Mr. Slimmer had violated Stow Codified Ordinances 337.04(A), 333.01(a)(1)(D), and 333.01(a)(1)(A). Mr. Slimmer filed a motion to suppress alleging that: (1) Officer Wike lacked reasonable suspicion to detain him for standardized

field sobriety testing; (2) Officer Wike failed to conduct the field sobriety tests in substantial compliance with the NHTSA manual; and (3) Officer Wike lacked probable cause to arrest Mr. Slimmer. A hearing was held on the motion, at which Officer Wike testified and videos of the stop were admitted into evidence. The parties stipulated that the trial court should take judicial notice of Section 8 of the NHTSA manual, related to field sobriety tests; however, the manual was not admitted into evidence and is not a part of this Court's record.

{¶4} The trial court denied Mr. Slimmer's motion to suppress. Mr. Slimmer pleaded no contest to violating Stow Codified Ordinance 333.01(a)(1)(A), operating a vehicle while under the influence of alcohol, and the remaining charges were dismissed. Mr. Slimmer was sentenced accordingly, and his sentence was stayed pending appeal.

{¶5} Mr. Slimmer now raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED WHEN IT FOUND THAT OFFICER WIKE HAD REASONABLE SUSPICION TO DETAIN [MR. SLIMMER] TO PERFORM STANDARDIZED FIELD SOBRIETY TESTS.**

{¶6} In his first assignment of error, Mr. Slimmer argues the trial court erred in concluding Officer Wike had reasonable suspicion to detain him to perform standardized field sobriety tests. Mr. Slimmer specifically asserts that: (1) slow and deliberate movements are not an indicator of impairment in the NHTSA manual; (2) the officer's testimony that there was a strong odor of alcohol emanating from the vehicle was not credible because the officer did not mention the same in the narrative portion of her report; and (3) the trial court made several references to Mr. Slimmer fumbling for and dropping documents when the officer only mentioned

that Mr. Slimmer fumbled for documents once. In addition, Mr. Slimmer maintains the totality of the evidence does not amount to reasonable suspicion.

{¶7} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶8} "A police officer must simply have a reasonable suspicion of criminal activity in order to conduct field sobriety tests." *State v. Todd*, 9th Dist. Wayne No. 19AP0012, 2020-Ohio-963, ¶ 8, citing *State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 12. "Reasonable suspicion requires that an officer be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Todd* at ¶ 8, quoting *State v. Davenport*, 9th Dist. Lorain No. 11CA010136, 2012-Ohio-4427, ¶ 6. "The totality of the circumstances is considered when determining whether reasonable suspicion exists." *State v. Panero*, 9th Dist. Medina No. 16CA0067-M, 2018-Ohio-1005, ¶ 18. "No single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." (Internal quotations and citations omitted.) *State v. Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 25.

{¶9} The only witness to testify at the suppression hearing was Officer Wike. At the time of the hearing, she had been an officer with the Stow Police Department for 10 months. State's Exhibit A was also admitted into evidence which included the body camera video and dash camera video of both Officer Wike and Sergeant Erik Dirker who provided backup.

{¶10} The trial court made the following factual findings:

On July 31, 2021[,] Officer Samantha Hornyak (now Wike) was on duty. At approximately 3:05 a.m. early Saturday morning, she observed a vehicle sitting in a church parking lot. The church was closed at the time. When the vehicle finally pulled out it did not have working tail[lights]. Officer Wike made a traffic stop on Darrow Road in the City of Stow. She approached the passenger side of the vehicle and knocked on the window. There were no other passengers in the vehicle. She asked the driver where he was going and he responded to his home in Medina. She asked him where he was coming from and he responded a buddy's home on Water Street in Kent.

She observed that the defendant's actions and speech were slow and deliberate. When she returned to the vehicle she approached the driver's side. At that time, she smelled a strong odor of an alcoholic beverage coming from the vehicle. She also observed the defendant fumbling for and dropping documents. She continued to see slow speech and movements. The defendant struggled with his insurance information and his cell phone after contacting his mother for that information. Upon being asked by the officer on several occasions, the defendant denied drinking. In Exhibit A, the court observed that the defendant did produce his license promptly and stated his cell phone number upon request without difficulty. But the court also observed the defendant move slowly and fumbling when trying to find his insurance information.

Based on the time of day on a weekend coming from a college town in addition to her observations, Officer Wike requested that the defendant submit to standardized field sobriety tests. She found six out of six clues on the horizontal gaze nystagmus (HGN) test. She observed two clues on the walk and turn test. She found one clue on the one leg stand test. Thereafter, the defendant agreed to a portable breath test (PBT) in which the results were a .142. After the PBT, the defendant was placed under arrest for Operating a Vehicle Under the Influence (OVI).

{¶11} Reviewing the videos and suppression hearing transcript provided additional details which were not indicated by the trial court, but are consistent with its findings. In approaching the stopped vehicle, the officer indicated she had to knock on the window to get Mr. Slimmer's attention. While Mr. Slimmer promptly produced his license, he mistakenly provided his

registration, instead of his insurance information, which was requested. Officer Wike described Mr. Slimmer's movements and speech as slow and deliberate. Although Mr. Slimmer ultimately produced insurance information, after returning to the cruiser, Officer Wike noticed the coverage was expired. Officer Wike then approached the driver's side and "immediately noticed the strong odor of an alcoholic beverage coming from [Mr. Slimmer] in the vehicle[.]" Officer Wike allowed Mr. Slimmer to call his parents to get the insurance information, because the vehicle was his father's. Mr. Slimmer contacted his mother and instead of asking about the insurance information, he asked his mother where the registration would be. While on the phone, Officer Wike returned the insurance paperwork and requested Mr. Slimmer end the call. Officer Wike then described Mr. Slimmer struggling with the phone and dropping papers. At that point, Officer Wike had Mr. Slimmer exit the vehicle to perform standardized field sobriety tests.[1]

{¶12} Mr. Slimmer argues that slow and deliberate movements are not indicators of impairment because they are not in the NHTSA manual. Officer Wike testified that even if slow and deliberate movements were not listed in the manual as a factor, in her experience, such movements could be an indicator that someone was under the influence. Notably, the NHTSA manual is not in the record, so this Court has no way to confirm Mr. Slimmer's contention. Nevertheless, this Court has previously listed slow and lethargic movements as an indication of impairment. *See State v. Clark*, 9th Dist. Wayne No. 18AP0056, 2020-Ohio-1178, ¶ 12 ("[The trooper] testified that Mr. Clark was stumbling and unsteady on his feet, had a strong odor of alcoholic beverage coming from his breath, and was exhibiting bloodshot and glassy eyes, "slow lethargic movements," and "thick slurred speech."); *State v. Hess*, 9th Dist. Wayne No. 12CA0064,

---

[1] While the officer also testified that Mr. Slimmer's speech was slurred and that he had bloodshot eyes, those facts were not adopted by the trial court and so they will be excluded from our discussion.

2013-Ohio-4268, ¶ 15 ("The testimony at trial demonstrated that when Officer Saal observed [Mr.] Hess on the night of the accident, [Mr.] Hess was "unsteady on his feet" and "slow in his actions." Officer Saal noticed that [Mr.] Hess' speech was "extremely slurred" and that his eyes were "red, bloodshot and glassy." Officer Saal further testified that he could smell alcohol at the time [Mr.] Hess stepped out of the van."). Accordingly, we cannot say the trial court erred in considering slow and deliberate movements as a factor for impairment given the testimony at the suppression hearing.

{¶13} Mr. Slimmer next asserts Officer Wike's testimony was not credible concerning the odor of alcohol because Officer Wike did not discuss the same in her narrative report. However, as noted above, the trial court is in the best position to make credibility determinations. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Here, Officer Wike's credibility is supported by her body camera video. In the video, Officer Wike is standing near the driver's side of the vehicle, when she asks Mr. Slimmer about the smell of alcohol.

{¶14} Mr. Slimmer also contends he only fumbled for documents once, and, thus, the trial court's multiple references to him fumbling for documents is erroneous. When Officer Wike was asked about Mr. Slimmer fumbling for documents on cross-examination, she provided the following response:

> So when he was first trying to procure his insurance card, he was very slow and had a – it almost seemed a difficult time going into the glove box, getting his papers, riffling through them.
>
> And then you can – the main instance that I'm speaking about, you can see on the body cam, is when I ask him to put his papers on his passenger seat. Instead of doing that he goes to put them into the little folder. He drops them, tries to hang up the phone. That's the exact instance you can see on the body cam.
>
> There were other instances that unfortunately the camera is hidden by the B-pillar of the vehicle and you can't see as well.

**{¶15}** Accordingly, based upon Officer Wike's testimony, there was evidence before the trial court that Mr. Slimmer was fumbling for documents on multiple occasions. Mr. Slimmer has not demonstrated the trial court erred in its characterization of his fumbling with documents.

**{¶16}** Lastly, Mr. Slimmer argues the totality of the circumstances did not support that Officer Wike had reasonable suspicion to further detain him for standardized field sobriety testing. Here, the stop occurred in the early morning hours on a Saturday and Mr. Slimmer indicated he was driving home from Kent after spending time with his friend on Water Street. *See State v. A.C.,* 9th Dist. Medina No. 19CA0047-M, 2020-Ohio-713, ¶ 12 ("The stop occurred at 2:45 a.m. approximately five blocks from a bar. A.C. acknowledged that she and her passengers were coming from the bar[.]"). There was testimony that Mr. Slimmer's friend lived in a college town with multiple bars. The trial court found Mr. Slimmer's actions and speech were slow and deliberate based upon Officer Wike's testimony regarding the same. *See Clark*, 2020-Ohio-1178, ¶ 12 (evaluating slow movements as a factor); *State v. Won*, 9th Dist. Medina No. 20CA0076-M, 2021-Ohio-3869, ¶ 19, quoting *State v. Evans*, 127 Ohio App.3d 56, 63 (11th Dist.1998), fn.2. (listing overly deliberate speech as a factor). Further, even defense counsel acknowledged in closing argument that Mr. Slimmer was "very slow and deliberate with his actions[.]" Accordingly, we conclude that this finding is supported by competent, credible evidence. *See Burnside* at ¶ 8. Additionally, there was evidence presented that Mr. Slimmer fumbled with documents and had a strong odor of alcohol coming from the driver's side of the vehicle and his person. *See State v. Iloba*, 9th Dist. Wayne No. 20AP0030, 2021-Ohio-3700, ¶ 17 ("both reasonable suspicion and probable cause can be demonstrated with reference to physiological factors that tend to indicate impairment, such as an odor of alcohol on a suspect's person, bloodshot or glassy eyes, slurred speech, or a confused manner."); *Won* at ¶ 19-20 (noting that actions such as "dropping keys,

falling over, fumbling for a wallet" might indicate a lack of coordination which can be a factor indicating impairment). Finally, while not specifically articulated as a factor by the trial court, the evidence also supports Mr. Slimmer had some level of impairment or confusion. Officer Wike asked Mr. Slimmer for proof of insurance and he instead produced the vehicle registration. While this might not be significant on its own, we note Mr. Slimmer again was confused when he asked his mother where the registration was after Officer Wike allowed him to call his parents to obtain the insurance information. *See Iloba* at ¶ 17 (citing confused manner as a potential indicator of impairment).

{¶17} Indeed "[t]he [officer's] observations must also be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. A reviewing court must give due weight to the officer's training and experience and view the evidence as it would be understood by those in law enforcement." (Internal quotations and citations omitted.) *Iloba* at ¶ 14.

{¶18} Considering the totality of the circumstances, we cannot say the trial court erred in concluding Officer Wike had reasonable suspicion to further detain Mr. Slimmer for standardized field sobriety testing.

{¶19} Accordingly, Mr. Slimmer's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN CONSIDERING THE HGN AND WAT STANDARDIZED FIELD SOBRIETY TESTS WHEN THEY WERE NOT DONE IN SUBSTANTIAL COMPLIANCE WITH THE NHTSA MANUAL.**

{¶20} In his second assignment of error, Mr. Slimmer argues the trial court erred in considering the results of the horizontal gaze nystagmus ("HGN") and walk and turn ("WAT") tests because they were not conducted in substantial compliance with NHTSA manual.

**{¶21}** R.C. 4511.19(D)(4)(b) states:

In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol, a controlled substance, or a metabolite of a controlled substance in the whole blood, blood serum or plasma, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

(i) The officer may testify concerning the results of the field sobriety test so administered.

(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.

(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

The State bears the burden of establishing substantial compliance on the part of the administering officer. *State v. Mencini*, 9th Dist. Summit No. 27322, 2015-Ohio-89, ¶ 18.

**{¶22}** As previously indicated, while the trial court took judicial notice of the NHTSA manual, the manual itself was not admitted into evidence and is not before this Court on appeal. "The [S]tate may demonstrate what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual." (Internal quotations and citations omitted). *State v. Davis*, 9th Summit No. 29273, 2020-Ohio-473, ¶ 12.

**{¶23}** To the extent some standards and procedures were discussed during Officer's Wike's testimony, we cannot say the trial court erred in considering the HGN and WAT tests. During cross-examination, Officer Wike admitted that, for the HGN test, the stimulus should be

held approximately 12-15 inches from the suspect's eyes, slightly above eye level. On appeal, Mr. Slimmer argues Officer Wike agreed the video showed her holding the stimulus substantially higher. However, a review of the record indicates otherwise. During her testimony, Officer Wike did not admit to holding the stimulus substantially higher. Instead, Officer Wike explained the video at issue was at a "weird angle" and only at that particular angle did it look like her procedure was not in compliance. Additional video from the stop shows a completely different view of the scene and does not support Mr. Slimmer's claim.

{¶24} Mr. Slimmer also asserts Officer Wike should not have performed three passes of the portion of the HGN test used to determine if there is the onset of nystagmus prior to 45 degrees. Officer Wike admitted on cross-examination that only two passes were required by the manual. Mr. Slimmer has not explained how the third pass impacted the results of the test or prejudiced him. Officer Wike still only scored 6 clues, two for each of the three portions of the test.

{¶25} Mr. Slimmer additionally argues Officer Wike's instructions for the WAT test failed to utilize the precise language from the NHTSA manual causing Mr. Slimmer to receive two clues on the test. During cross-examination, Officer Wike agreed with what the language in the NHTSA manual states, and she also agreed she did not recite the language exactly as it is stated in the manual. However, Officer Wike testified she substantially complied with the NHTSA manual in giving the instruction. In light of this record, we cannot say the trial court erred in finding Officer Wike substantially complied in giving the instructions for the HGN and WAT tests.

{¶26} Further, to the extent we have not addressed Mr. Slimmer's arguments specifically referencing the NHTSA manual, we conclude we are unable to do so because the NHTSA manual is not in the record. ("Without any standards in the record with which to compare [the officer's]

procedure, it is impossible for this Court to determine whether the test was given in substantial compliance.  This Court is left to presume regularity.")  *Mencini* at ¶ 21.

**{¶27}**  Accordingly, Mr. Slimmer's second assignment of error is overruled.

<h2 style="text-align:center"><u>ASSIGNMENT OF ERROR III</u></h2>

**THE TRIAL COURT ERRED IN FINDING THAT OFFICER WIKE HAD PROBABLE CAUSE TO ARREST [MR. SLIMMER] UNDER THE TOTALITY OF THE CIRCUMSTANCES.**

**{¶28}**  In his third assignment of error, Mr. Slimmer argues the trial court erred in finding Officer Wike had probable cause to arrest him under the totality of the circumstances.

**{¶29}**  "Probable cause consists of a reasonable ground for belief of guilt."  (Internal quotations and citations omitted.)  *Iloba*, 2021-Ohio-3700, at ¶ 17.  "When determining whether a law enforcement officer had probable cause to arrest someone for driving under the influence, courts must consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence."  (Internal quotations and citations omitted.)  *Id.*

**{¶30}**  Here, in addition to the factors discussed in the first assignment of error, the results of the standardized field sobriety testing provided further evidence Mr. Slimmer was driving while impaired.  Officer Wike observed six out of six clues on the HGN test.  Officer Wike testified if she observed four or more clues on this test, there was an 88% chance that the suspect has a BAC of .08 or above.  In addition, Officer Wike found two of eight clues on the WAT test.  Officer Wike explained that if two or more clues are observed, there is a 68% chance that the suspect's BAC is .1 or above.  Out of the four possible clues on the one-legged stand test, Officer Wike observed one.  Officer Wike testified there is no statistical correlation with one clue being present

on the one-legged stand test with respect to what Mr. Slimmer's BAC would be. Nonetheless, when considering the clues from the HGN test and the WAT test, Officer Wike testified they indicated there was an 80% chance that Mr. Slimmer's BAC was over .1.

{¶31} Based upon the factors discussed in the first assignment of error, including a strong odor of alcohol, time of day, slow and deliberate speech, coordination issues and confusion, in addition to the results of the standardized field sobriety testing, we cannot say the trial court erred in determining Officer Wike possessed probable cause to arrest Mr. Slimmer.

{¶32} Accordingly, Mr. Slimmer's third assignment of error is overruled.

III.

{¶33} Mr. Slimmer's assignments of error are overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT


HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

**{¶34}** I respectfully dissent from the judgment of the majority as I would sustain Slimmer's first assignment of error because I would conclude that the trial court erred in finding that the officer had reasonable suspicion to detain Slimmer to perform standardized field sobriety tests.

**{¶35}** "Reasonable suspicion requires that an officer be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *State v. Todd*, 9th Dist. Wayne No. 19AP0012, 2020-Ohio-963, ¶ 8, quoting *State v. Davenport*, 9th Dist. Lorain No. 11CA010136, 2012-Ohio-4427, ¶ 6. "The totality of the circumstances is considered when determining whether reasonable suspicion exists." *State v. Panero*, 9th Dist. Medina No. 16CA0067-M, 2018-Ohio-1005, ¶ 18. "[N]o single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." (Internal quotations and citations omitted.) *State v. Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 25.

> [T]hese factors include, but are not limited to (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic

driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*State v. Evans*, 127 Ohio App.3d 56, 63 (11th Dist.1998), fn. 2; *see also State v. Won*, 9th Dist. Medina No. 20CA0076-M, 2021-Ohio-3869, ¶ 19, citing *Evans* at 63, fn. 2.

{¶36} In reviewing the record, including the videos, I would conclude that the trial court erred in deciding that the officer possessed the reasonable suspicion necessary to have Slimmer perform field sobriety testing. While there were factors that supported the officer having reasonable suspicion, such as the day and time of the stop, Slimmer pulling out of a church parking lot at that late hour, the odor of alcohol, and the fact that Slimmer was in Kent with a friend close to an area with a lot of bars, the vast majority of the evidence did not. Despite the officer's testimony and the trial court's findings, the videos do not support that Slimmer had slow or deliberate movements or speech. In addition, Slimmer did not exhibit erratic or dangerous driving and denied alcohol consumption. "For better or worse, the law prohibits *drunken* driving, not driving after a drink. Likewise, it is only a crime to be in physical control of a vehicle while under the influence." (Internal quotations and citations omitted.) *State v. High*, 9th Dist. Medina No. 17CA0019-M, 2017-Ohio-8264, ¶ 14. Further, Slimmer was polite in answering the officer's questions, and the trial court did not find that Slimmer had bloodshot or glassy eyes or slurred speech, despite the officer's testimony to the contrary. Considering the totality of the

circumstances, I cannot say that the officer possessed reasonable suspicion to detain Slimmer for field sobriety testing. *See Panero*, 2018-Ohio-1005, at ¶ 18.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

JAIME M. SYX, Director of Law, for Appellee.