DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the State of Ohio, appeals the judgment of the Medina Municipal Court, which granted, in part, appellee Hallie Haneberg's motion to suppress. This Court affirms.
 I. {¶ 2} On August 16, 2005, appellee was cited after a traffic stop for operating a motor vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a), and for traveling left of center in violation of R.C. 4511.25. Appellee filed a motion to suppress all evidence flowing from the traffic stop. The trial court held a hearing on the motion. On June 13, 2006, the trial *Page 2 
court issued a judgment entry, denying the motion to suppress in part, and admitting at trial evidence regarding appellee's refusal to submit to a breath test, the BAC Data Master checklist and the one-leg-stand test. The trial court, however, granted the motion in part, excluding at trial evidence regarding the walk-and-turn test and the horizontal gaze nystagmus ("HGN") test.
 {¶ 3} On June 15, 2006, the State timely appealed the granting in part of the motion to suppress. The State further properly certified that the appeal is not taken for the purpose of delay and that the ruling on the motion to suppress has rendered the State's proof with respect to the pending OVI charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed. See R.C.2945.67(A); Crim.R. 12(K). The State raises one assignment of error for review.
 II. ASSIGNMENT OF ERROR "THE MEDINA MUNICIPAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS THE HORIZONTAL GAZE NYSTAGMUS FIELD SOBRIETY TEST."
 {¶ 4} The State argues that the trial court erred by granting appellee's motion to suppress the HGN test. This Court disagrees.
 {¶ 5} Regarding the relevant standard of review, this Court has stated:
 "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. The trial court acts as the trier of fact during a suppression hearing, and is therefore, best equipped to evaluate the credibility of witnesses and resolve *Page 3 
questions of fact. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." (Emphasis and internal citations omitted.) State v. Swan, 9th Dist. No. 22939, 2006-Ohio-2692, at ¶ 8.
 {¶ 6} The trial court excluded the HGN test for purposes of determining probable cause and suppressed the test at trial on the merits based upon its conclusion that Trooper Crist did not perform the HGN test in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") standards. Specifically, the trial court found that the respective positions of the trooper and appellee during the administration of the HGN test precluded the trooper's ability to properly estimate the 45-degree angle necessary to attain valid test results. As the finding of a lack of substantial compliance with NHTSA standards constitutes a conclusion of law, this Court conducts a de novo review.
 {¶ 7} The version of R.C. 4511.19(D)(4)(b) in effect at the relevant time states:
 "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the *Page 4 
national highway traffic safety administration, all of the following apply:
 "(i) The officer may testify concerning the results of the field sobriety test so administered.
 "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
See, also, State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, at ¶ 9
(recognizing that the General Assembly amended R.C. 4511.19, so that an arresting officer no longer must have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial. Rather, the officer may now testify regarding the results of a field sobriety test administered in substantial compliance with testing standards.).
 {¶ 8} The parties admitted into evidence the portion of the NHTSA DWI Detection and Standardized Field Sobriety Testing manual in effect at the time of the stop, regarding the concepts and principles of the standardized field sobriety tests. The manual addresses the procedures of the HGN test, including the three clues for which an officer must look. Specifically, an officer must first look for the lack of smooth pursuit, noting whether the eyes jerk or "bounce" as they follow a smoothly moving stimulus. Second, an officer must determine whether *Page 5 
there is distinct and sustained nystagmus, or involuntary jerking of the eyes, when the eye is held at maximum deviation for a minimum of four seconds. Maximum deviation occurs when the eye is as far to the side as possible, generally when there is no white visible at the edge. Third, an officer must determine whether the eyes begin jerking prior to moving 45 degrees to the side.
 {¶ 9} The manual notes that it is important for an officer to learn how to estimate a 45-degree angle. The manual states that how far the officer positions the stimulus from the suspect's nose is a critical factor in estimating a 45-degree angle. Specifically, the manual directs that the officer should move a stimulus held 12 inches from the suspect's nose 12 inches to the side to reach 45 degrees. Likewise, it directs that the officer should move a stimulus held 15 inches from the suspect's nose 15 inches to the side to reach 45 degrees. In the section captioned "Estimating a 45-Degree Angle," there is no reference to the positioning of the suspect's shoulders. However, under "Specific Procedures," the NHTSA manual directs the officer to start moving the stimulus at a speed that would take approximately four seconds to reach the edge of the suspect's shoulder when checking for the onset of nystagmus prior to 45 degrees. Accordingly, the manual directs that the officer use the shoulder as a reference point to gauge 45 degrees. In addition, the manual emphasizes the need to use the full 4 seconds during this part of the test: "NOTE: It is important to use the full four seconds when checking *Page 6 
for onset of nystagmus. If you move the stimulus too fast, you may go past the point of onset or miss it altogether."
 {¶ 10} The manual does not address where the test must take place or how the officer and suspect must be positioned in relation to one another. The manual does not mandate that the officer and suspect be standing, nor does it prohibit the officer and suspect from sitting during the administration of the test. In addition, the Preface of the manual states:
 "The procedures outlined in this manual describe how the Standardized Field Sobriety Tests (SFSTs) are to be administered under ideal conditions. We recognize that the SFSTs will not always be administered under ideal conditions in the field, because such conditions will not always exist. Even when administered under less than ideal conditions, they will generally serve as valid and useful indicators of impairment. Slight variations from the ideal, i.e., the inability to find a perfectly smooth surface at roadside, may have some affect on the evidentiary weight given to the results. However, this does not necessarily make the SFSTs invalid."
 {¶ 11} In this case, Trooper Samuel Crist of the State Highway Patrol testified that he pulled appellee over in the early morning hours of August 16, 2005. The ticket indicates that appellee was cited at 2:26 a.m. He testified that, while he administered the walk-and-turn test and one-leg-stand test outside, he administered the HGN test in the front seat of his cruiser where the overhead dome light provided good lightening. He testified that performing the HGN test inside the vehicle provided ideal conditions because of the good lighting, no distractions from overhead outside lights, and for safety reasons. Appellee's presence in the *Page 7 
front seat of his cruiser further allowed him to better observe her glassy and bloodshot eyes and to smell the odor of alcohol on her breath.
 {¶ 12} Trooper Crist testified that he received training and certification in the administration of field sobriety tests at the Highway Patrol Academy in 1985, and that he has participated in yearly in-service training regarding DUI detection and laws regarding DUI. Notwithstanding his certification to administer the field sobriety tests 20 years earlier, Trooper Crist testified that he had never before used the HGN test in the field. His testimony, upon direct examination by the State, was as follows:
 "Q. And in addition to that training, have you had an opportunity to use these field tests out in the field?
 "A. Yes.
 "Q. And that would, essentially my question is, prior to this stop you have used these tests?
 "A. Not the one-leg stand or horizontal gaze test. I used the walk and turn test and what I call the balance test, but not the other two."
 {¶ 13} Trooper Crist testified regarding his administration of the test to appellee. He testified that there were no obstacles between himself and appellee which interfered with his administration of the HGN test. On cross-examination, however, he testified that between the two bucket seats in the front of the cruiser are a vehicle camera affixed to the dashboard, the rearview mirror, a Python radar unit, a personal computer unit and monitor, and a radio console. He testified that there is a plexiglass shield behind the seats. *Page 8 
 {¶ 14} Trooper Crist testified that appellee was facing him and he was facing her in the front seat of his cruiser. He added that appellee turned towards him upon his request and that, naturally when one turns one's body, the neck follows. Trooper Crist testified that he held a pen approximately 12 inches in front of appellee's face before he began the smooth pursuit part of the HGN test. He then described his administration of the maximum deviation part of the test, stating that he checked for nystagmus when the eyes were beyond a 45-degree angle. He testified that he knows when the eye had surpassed 45 degrees, because there is no white showing. He asserted that that is when he begins his 4-second count.
 {¶ 15} Finally, Trooper Crist described his administration of the third part of the test where he must determine the onset of nystagmus prior to 45 degrees. He testified that he moves the pen for about 2 seconds. The manual directs a 4-second movement to reach the edge of the suspect's shoulder. When questioned regarding how far he moved the pen in front of appellee's face, he demonstrated the distance for the court. When asked to give an approximation of that distance, Trooper Crist responded, "I couldn't tell you." When asked whether he moved the pen 12 or 15 inches, he responded, "Probably — it's at least a foot, but it's — I couldn't tell you exactly how far."
 {¶ 16} Trooper Crist testified that his training in field sobriety tests included administering some in a seated position, but he had no training *Page 9 
administering them inside a vehicle. He further admitted that no NHTSA certified instructor ever observed or critiqued his administration of such tests in the front seat of his patrol car.
 {¶ 17} Appellee testified that Trooper Crist administered the eye test with a pen in the front seat of his patrol car. She testified that she was situated next to him and that she had to turn from her waist to face him "like this."
 {¶ 18} This Court finds that the trial court did not err in concluding that the trooper failed to administer the HGN test in substantial compliance with NHTSA standards. The manual emphasizes how critical it is for an officer to determine a 45-degree angle. The manual offers 3 ways to determine such an angle, to wit: by the use of a template, by positioning a stimulus a specific distance from the suspect's face and moving it that same distance to the side, and by gauging the angle in respect to the suspect's shoulder. There is nothing in the record to indicate that the trooper used a template. He further was unable to approximate a distance that he demonstrated for the court, calling into question his ability to gauge the proper angle by moving the stimulus a specific distance to the side. Finally, the trial court was able to observe appellee as she turned at the waist to see that her shoulders would not have been square to the trooper as he performed the third part of the HGN test. Accordingly, the trooper could not have properly gauged a 45-degree angle from the position of appellee's shoulder. Under these circumstances, there is nothing to show that the trooper properly gauged a 45- *Page 10 
degree angle to determine the onset of nystagmus prior to 45 degrees. Due to the NHTSA's emphasis on the importance of determining such an angle, the evidence indicating uncertainty as to whether the trooper was able to do so supports the trial court's conclusion that the HGN test was not administered in substantial compliance with the NHTSA standards. The State's assignment of error is overruled.
 III. {¶ 19} The State's assignment of error is overruled. The judgment of the Medina Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 11 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
MOORE, J. CONCURS