[Cite as *State v. Nesbitt*, 2025-Ohio-223.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 2023CA0073-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MEAGAN NESBITT | | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. TRC2300274 |

DECISION AND JOURNAL ENTRY

Dated: January 27, 2025

CARR, Judge.

{¶1} Appellant, Meagan Nesbitt, appeals the judgment of the Wadsworth Municipal Court. This Court reverses and remands.

I.

{¶2} This matter arises out of a traffic stop that occurred in Wadsworth during the early morning hours of January 28, 2023. A Wadsworth police officer initiated a stop of Nesbitt's vehicle after observing multiple traffic violations, including Nesbitt's failure to come to a complete stop at a red light. After observing signs of impairment, the officer decided to remove Nesbitt from the vehicle and administer the Horizontal Gaze Nystagmus ("HGN") test. Nesbitt was ultimately placed under arrest. The officer administered the other standardized field sobriety tests when Nesbitt arrived at the police station. The officer also asked Nesbitt to take a chemical test but Nesbitt refused. Nesbitt was charged with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). Nesbitt was also charged with violating R.C. 4511.19(A)(2), which

pertains to offenders who refuse to submit to a chemical test under circumstances where they have been convicted of an OVI violation within the past 20 years. Nesbitt pleaded not guilty to the charges at arraignment.

{¶3} Nesbitt filed a joint motion to suppress and motion in limine wherein she sought to suppress the evidence obtained during the traffic stop and at the police station. The trial court held a hearing on the motion to suppress and then issued a journal entry denying the motion. Nesbitt filed a supplemental motion in limine just prior to trial that was denied by the trial court. The matter proceeded to a jury trial where Nesbitt was found guilty of both OVI counts. The trial court imposed sentence on both offenses and ordered that the jail sentences were to be served consecutively.

{¶4} On appeal, Nesbitt raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF DEFENDANT-APPELLANT BY ADMITTING THE RESULTS OF THE HORIZONTAL GASE NYSTAGMUS (HGN) TEST WHICH WAS NOT ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH NATIONAL HIGHWAY AND TRAFFIC SAFETY ADMINISTRATION (NHTSA) STANDARDS[.]

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ERRONEOUSLY DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS[.]

{¶5} In her first assignment of error, Nesbitt argues that the trial court erred in the manner that it allowed the State to introduce the results of the HGN test. In her second assignment of error, Nesbitt challenges the suppression ruling on the basis that the trial court erroneously determined that there was probable cause to place her under arrest during the traffic stop.

**{¶6}** This Court's review of the trial court's ruling on the motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. *Id.*; *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist. 1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist. 1994). Consequently, this Court accepts a trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8. Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo. *See id.* In other words, this Court then accepts the trial court's findings of fact as true and "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997).

## Background

**{¶7}** Nesbitt raised a variety of issues in her joint motion to suppress and motion in limine, including whether the standardized field sobriety tests were administered in compliance with the NHTSA manual and whether there was probable cause to place Nesbitt under arrest. At the outset of the suppression hearing, the State stipulated that the HGN test was the only test relevant to the probable cause determination because the other tests were administered post-arrest.[1] Officer Ashley Wanchisn of the Wadsworth Police Department, who initiated the stop of Nesbitt's vehicle on the evening in question, was the only witness to testify at the suppression hearing.

---

[1] Although Nesbitt also argued that the results of the walk-and turn and one-leg stand tests should not be admitted at trial because they were not administered properly, she acknowledged that those issues fell outside the scope of the suppression hearing because the tests were administered post-arrest.

{¶8} Based on the evidence presented at the suppression hearing, the trial court set forth the following factual findings in its order ruling on the motion to suppress. On January 28, 2023, Officer Wanchisn observed two vehicles on Leatherman Road that appeared to be following each other. Officer Wanchisn observed that the vehicles were traveling approximately ten miles per hour over the speed limit. Officer Wanchisn began to follow the vehicles. Officer Wanchisn noticed that the second vehicle, which was driven by Nesbitt, drifted over the fog line on multiple occasions. At one point, Nesbitt's vehicle "either hit the curb or ran over the sewer drain[.]" Nesbitt then failed to make a complete stop at a red light. When Officer Wanchisn activated her overhead lights in order to initiate a traffic stop, Nesbitt took approximately 40 seconds prior to coming to a complete stop. When Officer Wanchisn approached the vehicle, she noticed "a slight odor of an alcoholic beverage coming from inside of the vehicle, and that [Nesbitt's] speech was slurred and [she] appeared to be having a hard time selecting the appropriate words." After having Nesbitt perform two non-scientific divided attention tests, Officer Wanchisn asked Nesbitt to exit the vehicle. Officer Wanchisn administered the HGN test. After completing the HGN test, Nesbitt declined to take the other standardized test. At that point, Nesbitt was placed under arrest and taken to the police station in Wadsworth.

{¶9} As noted above, the trial court addressed an array of issues in ruling on the motion to suppress. The trial court first determined that there was a valid basis to initiate the traffic stop of Nesbitt's vehicle and, further, that there existed a reasonable suspicion of intoxication necessary to justify the administration of the field sobriety tests.

{¶10} In regard to the administration of the HGN test, the trial court set out a layered analysis based on its review of the testimony and video evidence presented at the suppression hearing. The trial court found that Officer Wanchisn substantially complied with the NHTSA

manual regarding the preliminary questions and instructions, as well as ensuring that Nesbitt was in the correct body position to take the test. The trial court noted, however, that the evidence presented at the hearing begged the question of whether the lack of smooth pursuit portion of the test was administered properly. The trial court answered that question in the negative, finding as follows:

> Upon watching the video, it appears [Officer Wanchisn] did 2 ½ passes, then paused, then did 1 ½ passes and then paused. On that she did 2 passes for maximum deviation and 2 passes for onset of 45 degrees so that [the] last 2 were done appropriately but the question is did she have 2 complete passes on lack of smooth pursuit. The officer testified she did 1 pass for equal tracking and then the other 3 passes were for lack of smooth pursuit. However, pursuant to the 2018 N.H.T.S.A., manual Session 8, page 34, it clearly states in bold letters, there should be a clear, distinguishable break between the check for equal tracking and the lack of smooth pursuit. It also states that checking for equal tracking may be done more than once. In this case, the first 2 ½ passes were continuous and no pause. The Court can only assume that was for checking equal tracking. Following that, she stopped, asked i[f] everything was alright and did 1 ½ passes. The Court can only assume this was for lack of smooth pursuit. That was not done within substantial compliance in that she did not complete the second pass on [Nesbitt's] right eye.

{¶11} Based on the aforementioned analysis, the trial court found that one of the clues on the HGN test that Officer Wanchisn identified during her testimony at the suppression hearing could not be part of her testimony at trial. Thus, while Officer Wanchisn testified at the suppression hearing that she recognized four of the six possible clues on the HGN test, the trial court ruled that her testimony at trial would be limited to finding three of the six possible clues. With respect to whether there was probable cause to place Nesbitt under arrest, the trial court determined that the traffic violations and Officer Wanchisn's observations upon approaching the vehicle, combined with the results of the non-scientific divided attention tests and the HGN test, were sufficient to establish probable cause to place Nesbitt under arrest for OVI.

{¶12} When the matter proceeded to trial, Officer Wanchisn provided extensive testimony regarding the traffic stop. In regard to the results of the HGN test, Officer Wanchisn testified that

she observed three of the six possible clues of impairment. Officer Wanchisn explained that nystagmus is the involuntary jerking of the eyes. When asked about the significance of observing nystagmus in an individual who does not have any medical issues, Officer Wanchisn testified, without objection, that the presence of nystagmus is indicative of alcohol intoxication.

Discussion

{¶13} Nesbitt raises a two-part argument in support of her first assignment of error. First, Nesbitt contends that the trial court erred by allowing the State to introduce the results of the HGN tests, even in a modified capacity, because the officer's failure to administer the lack of smooth pursuit portion of the test in substantial compliance with NHTSA standards rendered the results of the test inadmissible. Nesbitt also argues that the trial court erred by allowing the officer's testimony at trial regarding the significance of the presence of nystagmus because that testimony exceeded the scope of proper lay testimony regarding impairment. In her second assignment of error, Nesbitt contends the trial court's determination that there was probable cause to place her under arrest must be reversed because the trial court's analysis hinged on the results of the HGN test.

{¶14} At the outset we note that while Nesbitt couches a portion of her argument in terms of plain error, Nesbitt's argument regarding the admissibility of the HGN test was properly raised below because she placed the court and the State on notice of that issue in her motion to suppress and then fully litigated that issue at the suppression hearing. *See State v. Shindler*, 70 Ohio St.3d 54 (1994), at syllabus.

{¶15} R.C. 4511.19(D)(4)(b) provides, in part, as follows:

[I]f a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety

tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

(i) The officer may testify concerning the results of the field sobriety test so administered.

(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.

(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

R.C. 4511.19(D)(4)(c) adds that "[R.C. 4511.19(D)(4)(b)] does not limit or preclude a court, in its determination of whether the arrest of a person was supported by probable cause . . . from considering evidence or testimony that is not otherwise disallowed by [R.C. 4511.19(D)(4)(b)]."

{¶16} In discussing R.C. 4511.19(D)(4)(b), the Supreme Court of Ohio has held that "the results of the field sobriety tests are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines. A motion to suppress is an appropriate pretrial proceeding designed to determine the admissibility of this evidence." *State v. Codeluppi*, 2014-Ohio-1574, ¶ 11. "The trial judge is the guardian of the admissibility of evidence." *State v. Boczar*, 2007-Ohio-1251, ¶ 23. In order for the results of an HGN test to be admissible without the support of expert testimony, the State must show that the officer who administered the test was properly trained and that the test was administered in substantial compliance with the testing standards. *Boczar* at ¶ 27-28. This Court has recognized that it is proper for a trial court to suppress the results of an HGN test when it determines that the test is not administered in substantial compliance with the NHTSA standards. *See State v. Haneberg*, 2007-Ohio-2561, ¶ 18 (9th Dist.).

{¶17} Under the circumstances of this case, the trial court's suppression order must be reversed. Standardized field sobriety tests must be administered in substantial compliance with testing standards established by the NHTSA in order for the results to be admissible at trial. R.C. 4511.19(D)(4)(b)(i). Here, the trial court made a clear and conspicuous finding that the HGN test was not administered in substantial compliance with the NHTSA standards. Significantly, however, instead of ruling that the results of the HGN test were inadmissible, the trial court effectively modified the results of the tests and ruled that Officer Wanchisn could testify at trial regarding the modified results. The trial court erred in this regard. Furthermore, the trial court erred in considering the results of the HGN test in analyzing whether there was probable cause to place Nesbitt under arrest during the traffic stop. As the results of the HGN test were considered as part of the trial court's probable cause determination, this matter must be remanded for the trial court to analyze in the first instance the probable cause issue upon consideration of the appropriate evidence. *See generally State v. Trivett*, 2016-Ohio-8204, ¶ 9. (9th Dist.).

{¶18} While Nesbitt's first assignment of error also contains a challenge to the admission of Officer Wanchisn's trial testimony regarding the significance of nystagmus, we decline to address that issue at this time given that Nesbitt's conviction and sentence must be vacated in order for the trial court to rule on the outstanding suppression issue.

{¶19} The first and second assignments of error are sustained to the extent discussed above.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED ERROR IN FAILING TO MERGE FOR SENTENCING THE OFFENSES UNDER [R.C.] 4511.19(A)(1)(A) AND [R.C.] 4511.19(A)(2)[.]

**{¶20}** In her third assignment of error, Nesbitt argues that the trial court erred in failing to conduct a merger analysis at sentencing regarding her convictions for R.C. 4511.19(A)(1)(a) and 4511.10(A)(2). Given that this Court's resolution of Nesbitt's first and second assignments of error renders any sentencing issues moot, we decline to address Nesbitt's third assignment of error. App.R. 12(A)(1)(c).

III.

**{¶21}** Nesbitt's first and second assignments of error are sustained to the extent discussed above. We decline to address Nesbitt's third assignment of error. The judgment of the Wadsworth Municipal Court is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DARREN L. MEADE, Attorney at Law, for Appellant.

BRADLEY J. PROUDFOOT, Director of Law, for Appellee.